Thank you. And with that, I would also like to reserve one-minute rebuttal time. Okay, thank you. So in this oral argument, I wanted to address four issues. First, that this Court does have jurisdiction to review this reinstatement order at issue. Second, that Mr. Tamayo did not reenter the United States illegally. And third, I wanted to address that the Department of Homeland Security used a deportation order issued in 1989, and there was a later one in 1993 that should have been used. And fourth, the government violated the petitioner's due process right by the way that he was actually placed under arrest and subjected to the reinstatement order. If you're going to get through your time, keep in mind we've read the briefs. So if you're going to be covering four issues, be sure that you're covering things that aren't already in your briefs. Oh, thank you, yes. So I wanted to start with addressing whether or not my client actually entered the United States legally or illegally. And under the case Sum or Sum v. Holder, it seems clear that he actually entered the United States legally. He used an alien registration card when he entered the United States. And in this case, Sum, where actually you, Judge Graber, did write the opinion, it says that an entry has to be procedurally legal, and it doesn't matter whether it was substantive legal. Well, that's true for some purposes, but in this statute, 1231a5, why didn't Congress intend for that to mean a substantively legal, not procedurally regular, but substantively legal entry? Well, I would pose that it would be not substantively legally, because the ‑‑ this is actually a statute that deals with procedure. And it's a procedural issue, whether you reinstate or not reinstate a removal or deportation order. So in order for the Petitioner to have illegally entered, he must have circumvented the procedures, which is usually the case. So if he's good at fooling people, he gets a benefit that less sophisticated illegal entrance gets? Why would Congress intend him to get that benefit? Well, Your Honor, I wouldn't say that the Petitioner in this case was particularly sophisticated, because it seems from his actual ‑‑ Well, that's not, I guess, the point of my question. But what you're suggesting is that a person who is better at sneaking in gets a benefit over a person who's worse at sneaking in, even though they're both substantively not entitled to reenter the United States. Well, Your Honor, in some, this was actually addressed by finding that the Petitioner in some could not avail himself to the benefit of the 212H waiver because he circumvented procedurally how he came into the United States. And, well, in that case, it worked out that he did not get the benefit. But in this case, it's not the policy whether or not more sophisticated people do get the benefit when they sneak in. It's how to read the words admission and lawful entry and how it was interpreted by the courts and also by the BIA. In fact, there is a very recent case in ‑‑ from the BIA matter of Quill-Lantan that was decided on July 28th, 2010, where the BIA again reinforced that the term admission and lawful admission is defined procedurally or not substantively. So ‑‑ so I think that answers the question whether or not he entered legally or illegally. And the Petitioner in this case entered ‑‑ was inspected and admitted and therefore entered legally. And under the reinstatement provisions, therefore, he cannot be subjected to a reinstatement order because there are three conditions. One, that he is an alien, which he did not dispute. Number two, that there is a deportation order, and we know there were two. And then number three, that he entered illegally. And that is what was at issue here, and the government cannot prove that. Then also in this case, because there were two deportation orders, one in 89 and one in 93, the Petitioner ‑‑ Sotomayor Is there any case that supports your view that the 1989 removal order could not be reinstated because there was a later removal order also? You Honor, not directly on point. I spent a lot of time researching that issue, and I could not find in any jurisdiction a case on point directly. I did find the continued case of Morales Ezequieldo that made the round several times through the Ninth Circuit, and there was a decision in 2010 where the court found that the Petitioner in that case granted the relief he sought, which was in that case a I-212 waiver of previous deportation, that then the deportation order previously issued would no longer be viable. Now, our argument is that because the Petitioner was put again into removal proceedings in 1993, the government made the decision not to reinstate the 1989 deportation order. Let's assume, just for argument's sake, that the Petitioner in the 1993 case had actually applied for a form of relief, which he did not, and if it were granted, then the 1989 deportation order would have definitely been superseded. Therefore, our argument is that procedurally, when the government makes a decision not to reinstate a previous deportation order, but to put the Petitioner, the alien, again into deportation proceedings, that they now have crossed the Rubicon, that basically they made a decision not to reinstate, and therefore, the deportation order later in time supersedes the earlier deportation order. And that is also distinguished from the case or from cases where there is a previous deportation order issued in removal proceedings or deportation proceedings and then an expedited removal order again, because the government went again through removal or deportation proceedings. That is our argument. And then last but not least, I also want to briefly address the way that Mr. Tamayo was actually subjected to the reinstatement. And there was a ---- Sotomayor He was fooled into coming in. But what is the prejudice? Because if he hadn't been fooled but had simply been arrested or brought in in some other way, would the result have been any different? The result would not ---- could have been different. Why? Well, because if he had known that he would be subjected to this, then he could have retained counsel, prepared a package, had possibly ---- could have obtained a freedom of information package and gone in with counsel instead of being surprised in that way. And what I think is it's also a problem and a pattern. And that was actually addressed in the dissent of Morales-Ezquierdo that families are subjected to that way because the normal pattern is that families are brought in in adjustment interviews and then the father or mother are arrested and simply deported. But I see I have only 44 seconds left. So I wanted to reserve that. Okay. You may do that. Thank you. May it please the Court. My name is Edward Wiggers and I represent the Respondent in this matter. The reinstatement provision applies to anyone who departs the country while under an order of removal and subsequently reenters the country illegally. Petitioner's use of his invalid green card at the border to enter the United States did not render his entry substantively lawful and DHS properly reinstated the removal order. The Court should accordingly deny the petition for review. In looking at this Court's decision in Hing Sum, it is important to compare the language of the two specific statutes involved. The statutes in that case referenced admissions. The statute in this case references an illegal reentry. And the Hing Sum Court also noted the differences between reentry and admission for immigration purposes. And it's clear from an analysis of the Hing Sum's analysis of the differences between the two that an illegal reentry is a substantive matter. Petitioner's reentry in this case was substantively illegal because he did not have a valid entry document when he attempted to come back in and he was also subject to the recidivist bars. And accordingly, there was an illegal reentry and DHS properly reinstated the order. And Respondent believes the arguments are adequately addressed in the brief, so unless the Court has further questions. I have one, and that is with respect to the 1989 versus 1993 reinstatement order, is there any case or statute or other authority of which you are aware that deals directly with this question that whether a series of reinstatement orders precludes the government's reliance on anything but the most recent one if there's been no withdrawal of it or? No, Your Honor. And I would point to the initial language in the Morales v. Cierto en banc decision and particularly one of its early footnotes where it talks about how it is possible to envision a system where the orders remain effective and do not necessarily need to be reinstated. However, the way the immigration law has gone, there is the requirement for reinstatement. So essentially, the orders exist and can be effected again. So if there are four of them, the government could pick number one or number two or number three so long as that has not, there's not been a proceeding that has resulted in some alteration of that order in some way? Yes, Your Honor. And subject to any further questions from the Court? I don't believe we have any. Thank you. Thank you, Your Honor. Ms. Connolly, you have a little bit of time if you want it. Thank you. Just very briefly, I again wanted to stress that there is a problem with subsequent or deportation orders because when an alien is applying for relief and there are previous deportation orders, it's usually the last one in time that counts in terms of him getting relief. That's all I wanted to point out. Thank you very much. The case just argued is submitted and we appreciate the arguments of both counsel.
judges: Noonan, Graber, Fisher